IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TONY CERENTANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   15-cv-874-SCW |
| | ) |
| UNITED MAINE WORKERS OF | ) |
| AMERICA 1974 PENSION PLAN, | ) |
| | ) |
| Defendant. | |

MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

INTRODUCTION

This matter is before the Court on dueling motions for summary judgment. Defendant the Plan filed a motion for summary judgment (Docs. 23 and 26) which Plaintiff has responded to (Doc. 30). Defendant filed a reply to its motion (Doc. 31). Plaintiff has also filed a summary judgment motion (Docs. 27 and 28) and Defendant responded to that motion (Doc. 29). The Court held a hearing on the motion on November 7, 2016. Based on the motion, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment.

FACTUAL BACKGROUND

Plaintiff's claims stem from a previous suit in this district seeking disability pension benefits under the United Mine Workers of America 1974 Pension Trust Plan.[1]

---

[1] The facts of this case are taken from the Seventh Circuit's opinion in that underlying suit, *Cerentano v.*

Plaintiff worked for Monterey Coal Company from 1978 until 2000. *Cerentano v. UMWA Health and Retirement Funds*, 735 F.3d 976 (7th Cir. 2013). During the course of his employment, Plaintiff suffered various injuries on the job including a sprained right back in 1986, an injury to his left elbow in 1989, an injury to his left knee in 1994, and a sprained muscle in 1999. *Cerentano*, 738 F.3d at 978-79. His last injury on the job occurred on July 27, 2000 when Plaintiff inhaled fumes and later fell out of a moving cart, injuring his shoulders, left ankle, and left knee. *Id.* at 979. Although Plaintiff ultimately returned to work after that injury, Plaintiff was later wrongfully discharged from the mine on July 28, 2000 after he received a false positive on a drug test. *Id.* Plaintiff was later diagnosed by Dr. Cantrell with depression due to his firing. *Id.*

In February 2005, Plaintiff was involved in a rear-ended car accident and was diagnosed with neck and lumbar pain. *Id.* One month later, his MRI showed a slight disc bulge and Plaintiff later complained of left knee pain from a small fracture stemming from the car accident. *Id.* In September 2005, Plaintiff was diagnosed with diabetes, left arm neuropathy, lumbar pain, depression, and left knee pain. *Id.* at 980. In December of that year he was examined for headaches with neck pain, pain between his shoulder blades, left arm pain, right arm pain, back pain, and left leg pain attributable to his automobile accident. *Id*.

Plaintiff subsequently sought Social Security Disability Insurance (SSDI) benefits starting from February 16, 2005, the date of the car accident. *Cerentano*, 735 F.3d at 980.

---

The Administrative Law Judge reviewing Plaintiff's application found that Plaintiff could not work because he was disabled and thus entitled to benefits. *Id.* The ALJ noted nine severe impairments but ultimately did not find Plaintiff disabled under these impairments. Instead, the ALJ found that Plaintiff was unable to "perform his past work because of his residual functioning capacity, which was limited due to asthma; diabetes; obesity; back and neck pain due to his 2005 car accident; degenerative disc disease of the lumbar, thoracic, and cervical spine; degenerative joint disease of the acromioclavicular joint; rotator cuff/subacromial bursitis; chronic back strain; 'flexion contracture of the left elbow'; 'internal derangement of the left knee'; anxiety, depression, and mood swings; severe headaches and pain running down the neck into the arms and hands; and 'knee pain attributable to a prior knee injury.'" *Id.*

After being awarded his SSDI benefits, Plaintiff then sought disability pension benefits from the United Mine Workers of America 1974 Pension Trust Plan (hereinafter "the Plan"). The Trustees of the Plan (hereinafter "the Trustees") denied his application and his appeal. *Cerentano*, 735 F.3d at 980-81. Plaintiff then filed suit and the Trustees agreed to review Plaintiff's application for a third time. *Id.* The Trustees again denied Plaintiff's application. *Id.* The district court ultimately granted summary judgment in favor of the Trustees and Plaintiff appealed to the Seventh Circuit.

In *Cerentano*, the Seventh Circuit found that the Trustees' decision regarding Plaintiff's application for benefits from the Plan was arbitrary and capricious. *Cerentano*, **735 F.3d at 981.** While the Trustees considered each of the nine severe

impairments noted by the ALJ, finding that none were the result of a former mine accident, the Seventh Circuit noted that the Trustees should have examined all injuries, including the non-severe injuries, which the ALJ relied on in determining Plaintiff's disability. "The [Trustees] also should have determined which of those injuries were caused by mine accidents and whether, in combination, those mine related injuries comprised a 'casual link' in the ALJ's aware of disability benefits." *Id*. **at 982.** The Seventh Circuit remanded the case directly to the Trustees in order to conduct a new review based on the Seventh Circuit's guidelines.[2]

While on remand to the Trustees, Plaintiff offered to submit additional evidence in support of his claim. This report from Dr. Arthur Sippo was based on his examination of Plaintiff and review of previous medical records (Doc. 28-3, p. 3). Sippo also found, from a review of the documents and Plaintiff, that Plaintiff's depression and anxiety were caused by the multiple injuries Plaintiff received on the job (*Id*. at p. 4). Prior to the submission by Sippo, the Plan's medical director reviewed Plaintiff's existing medical records and determined, in a memo to the Trustees, that there was inconclusive evidence connecting Plaintiff's disability with his mine accidents (Doc. 24-7, pp. 33-3). The medical director ultimately recommended obtaining an independent medical examination (*Id*. at pp. 33-34). Upon receipt of Dr. Sippo's report, the Trustees awarded Plaintiff a disability pension based on a causal link between

---

[2] The Seventh Circuit noted that some of the non-severe injuries the ALJ considered could have been the result of mine accidents including Plaintiff's injuries to this left elbow, left knee, and pain the AJG noted was from a prior injury.

Plaintiff's depression and anxiety and his mine accident of July 28, 2000 (Doc. 24-7, pp. 13-14).

Plaintiff subsequently filed this suit seeking prejudgment interest and attorney's fees associated with the award of a disability pension under the Plan.

## LEGAL STANDARDS

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).** *See also **Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248**. "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

## ANALYSIS

### A. Prejudgment Interest

The Plan first argues that Plaintiff cannot bring a stand-alone suit for prejudgment interest, but at oral arguments acknowledged that it could not point to any case law which prohibits a suit like Plaintiff's for prejudgment interest. Instead, the Plan argued that it did not improperly delay Plaintiff's benefits.

In ERISA cases there is a presumption in favor of prejudgment interest awards.

*Fritcher v. Health Care Serv. Corp.*, **301 F.3d 811, 820 (7th Cir. 2002).** Without such an award, plaintiff's compensation "is incomplete and the defendant has an incentive to delay." *Id.* **(citing** *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, **874 F.2d 431, 436 (7th Cir. 1989)); 29 U.S.C. § 1132(a)(3)(B) ("A civil action may be brought….to obtain other equitable relief").** Whether to award prejudgment interest is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Id.* **(quoting** *Trustmark Life Ins. Co. v. University of Chicago Hospitals*, **207 F.3d 876, 885 (7th Cir. 2000)(internal quotations omitted)).** Such an award of prejudgment interest can be awarded when benefits to a plaintiff were delayed. *Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, **165 F.3d 209, 212 (3rd Cir. 1998).**

Here, the Court finds that Plaintiff is entitled to prejudgment interest to put him in the position that he would have been had the Trustees properly analyzed his application for a disability pension. The Trustees initially denied Plaintiff's application but the Seventh Circuit rejected that analysis, finding it to be arbitrary and capricious. The Seventh Circuit instructed the Trustees to examine all of Plaintiff's injuries, both severe and non-severe, and to determine whether any of those injuries were caused by mine accidents and whether, in combination, all of those mine related injuries had "a casual link" in the award by the ALJ. *See Cerentano*, **735 F.3d at 982.** While the Plan argues that Plaintiff's benefits were not wrongfully withheld, clearly the Seventh Circuit found that their initial assessment was "arbitrary and capricious" and sent the case back

to the Trustees to analysis under the method instructed by the Seventh Circuit, specifically noting that there were injuries in the record, specifically Plaintiff's elbow, could have a casual link with the ALJ's decision to award benefits.

The Plan argues that benefits were still not wrongfully withheld on remand because it did not approve Plaintiff's benefits until he provided additional medical information, in the form of a report from Dr. Sippo. Plaintiff argues that the Trustees decision to award Plaintiff benefits upon "new evidence" from Sippo is pretextual as the evidence Sippo used to make his recommendation was already in the record before the Trustees. However, the Court need not decide whether the Trustees' decision was pretextual and, for purposes of these motions only, will presume that the decision was not pretextual.

Here, the initial decision of the Trustees, when Plaintiff's application was reviewed under the rubric provided by the Seventh Circuit, was that it did not have enough information to make a determination. A memo from the Trustees' medical director indicates that the records before the Trustees were inclusive and recommended an independent medical examination (Doc. 24-7, p. 34). This conclusion would have, presumably, occurred in 2010 had the Trustees used the standard outlined by the Seventh Circuit, instead of employing the wrong standard they used to deny Plaintiff's application. Thus, at that time, an independent examination would have been performed or more information would have been asked of Plaintiff, as was later provided by Plaintiff in the form of the report from Dr. Sippo, and Plaintiff would have

been granted his disability pension, as he was after the remand from the Seventh Circuit. Accordingly, the Court finds that Plaintiff is entitled to prejudgment interest as the Trustees' decision was arbitrary and capricious and, at the very least, the Trustees would have requested additional information leading to the approval of Plaintiff's application had they applied the right standard in 2010, as set forth by the Seventh Circuit.

However, while Plaintiff originally sought prejudgment interest stemming from the date of the ALJ's decision to award disability to Plaintiff, Plaintiff conceded at the hearing that the proper date for calculating interest would be the date that the Trustees initially denied his disability benefits under the Plan, April 1, 2010. Plaintiff indicated in his reply brief that had he been awarded disability benefits on April 1, 2010, he would have received a lump sum payment of $65,019 (Doc. 28-6). Plaintiff calculated the prejudgment interest on that amount at the rate of 3.25%, the average prime rate for the period. The Plan does not dispute Plaintiff's calculations or the average prime rate used for the calculations and thus the Court adopts Plaintiff's calculations. Plaintiff notes that 3.25% was the prime rate for the entire period of April 2010 to December 2014 (Doc. 28-7, p. 38-39). Interest on the amount totals $10,837.69. Plaintiff notes that he was also underpaid $1,039 per month for the months April 2010 to October 2012. Total interest on that amount totals $2,346.52. Plaintiff was underpaid $208.33 per month from November 2012 to December 2014. Interest on those monthly payments totals $202.86. Plaintiff also notes that he was underpaid a pension bonus in 2010 of $445.00. Interest on that amount from January 2011 to 2014 totals $61.69. Plaintiff was also underpaid a

$445.00 pension bonus in 2011.  Interest on that amount from January 2012 to December 2014 totals $45.51.  Thus, the total interest due as of December 2014 was $13,494.28.  Interest on that amount from January 2015 to July 2016 was $712.54 for a total amount of interest due as of July 31, 2016 of $14,206.81.  Thus, the Court finds that Plaintiff is entitled to prejudgment interest in the amount of $14,206.81, plus per diem simple interest to be awarded at the time of final judgment.  The per diem simple interest amount is $1.36/day.

### B. Attorney's Fees

Turning to the request for attorney's fees, the Plan first argued that Plaintiff could not pursue a stand-alone claim for attorney's fees.  The Plan argued that there was no case or controversy in which to award attorney's fees because the request for fees, itself, did not state a cause of action.  At the hearing, however, the Plan conceded that it could not point to any case law which prevented Plaintiff from seeking attorney's fees after being awarded benefits after a remand from the Seventh Circuit.

Turning to the merits of Plaintiff's claim for attorney's fees, "[f]ees may be awarded under ERISA to a party who achieves 'some degree of success on the merits.'" *Temme v. Demis Co., Inc.*, **762 F.3d 544, 549 (7th Cir. 2014) (quoting** *Hardt v. Reliance Standard Life Ins. Co.***, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)).**  The Seventh Circuit has noted that there are two approaches to analyzing an award of attorney fees after *Hardt*.  One approach views *Hardt's* "degree of success" as a threshold inquiry and then seeks to determine whether an award of fees is appropriate

based on the five factor test employed by courts prior to *Hardt*. *Id*. at 549. The second view holds that "assessing whether a party achieved some degree of success on the merits of its claim is the only factor a district court must account for, though a district court may still consider the other factors, as before." *Temme*, 762 F.3d at 550. The Seventh Circuit has affirmed the use of both tests and the decision whether to award attorney fees is in the discretion of the district court. *Id*. **(citing *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 915 (7th Cir. 2013); *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1090-91 (7th Cir. 2012)).** Those five factors include: "1) the degree of the offending parties' culpability; 2) the degree of the ability of the offending parties to satisfy an award of attorneys' fees; 3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions." *Temme*, 762 F.3d at 547.

Defendant conceded during oral arguments that Plaintiff achieved some degree of success on the merits. The Seventh Circuit found that the Trustees' analysis under the plan guidelines was arbitrary and capricious and remanded the matter back to the Trustees for further analysis. As a result of that remand, Plaintiff ultimately received disability benefits from the Plan. Without the Seventh Circuit's finding, Plaintiff would not have been awarded his disability benefits. Thus, Plaintiff clearly achieved some degree of success on the merits in obtaining a remand and reconsideration of his application for disability benefits in light of the Trustees' arbitrary and capricious

analysis.

Having found that Plaintiff achieved some degree of success on the merits, the Court could end its analysis there as the Seventh Circuit has found that test to be the only required test for awarding attorney's fees. However, the Court finds that Plaintiff would be entitled to attorney's fees even under the five factor test and thus will conduct the analysis under those factors as well.

Turning to the five factor test, the Court finds that those factors also weigh in favor of awarding attorney's fees. While the Plan argues that attorney's fees should not be awarded because their position was substantially justified, that argument does not hold up when considering the Seventh Circuit's holding in *Cerentano*. Defendant argues that Plaintiff's pension application was complicated and that the Plan each time reviewed Plaintiff's application and thoroughly and reasonably considered the documents submitting in support of his claim, ultimately denying Plaintiff benefits on three occasions. The Plan also points to the fact that Judge Reagan agreed that the Plan Trustees had acted reasonably in denying Plaintiff's claim. However, the Seventh Circuit found Trustees' analysis under the Plan to be arbitrary and capricious; thus the Defendant could be said to be highly culpable as even under the most stringent standard of "arbitrary and capricious", Defendant's analysis was considered "insufficient". Further, even when the matter was remanded back to the Plan from the Seventh Circuit, Defendant never did conduct the analysis that the Seventh Circuit directed it to conduct. Instead, the Plan focused its decision on the findings of anxiety and depression, focusing

its analysis on the severe injuries it had previously reviewed rather than looking at all of the injuries as the Seventh Circuit directed. Thus, the Court finds that the first and fifth factors weigh in Plaintiff's favor.

Turning to the second factor, the Plan argues that its financial difficulties are well known and that an award of attorney's fees in this case will limit the amount that can be awarded to other individuals in the future if the fund is depleted. While an award of attorney's fees would certainly take money from the fund, there is no evidence that it would completely deplete the fund. While it might not completely deplete the fun, however, certainly the award would diminish the Plan to some extent which could affect future benefits being awarded. Thus, the Court finds that this factor weighs toward not awarding attorney's fees.

But the Court finds that an award would deter the Plan from denying coverage in the future under the improper analysis which Defendant admitted it had been using prior to the Seventh Circuit's decision in *Cerantano*. Now, Defendant may be more likely to consider all injuries, both severe and non-severe, and whether there is a causal link to the award of benefits by the ALJ, as the Seventh Circuit ordered. This may lead to more members receiving benefits under a proper analysis of the Plan. Prior to this case, Defendant admittedly was not using this analysis and the Seventh Circuit has now deemed it improper for it to deny benefits without this type of analysis. Thus, the Court finds that the third factor weighs in Plaintiff's factor.

The fourth factor is a wash, benefiting neither side due to both the detriment and

benefit conveyed by an award of attorney's fees for the members of the plan. As the Court previously noted, while more members may now be qualified for disability under the Plan due to the analysis that the Defendant should be conducting in light of the Seventh Circuit's ruling, an award of attorney's fees will limit the funds in the Plan, which may limit the amount of awards to be given in the future.

Balancing the five factors, the Court finds that while not all of the factors weigh in favor of Plaintiff, the Court finds that most of the factors favor Plaintiff's award of attorney's fees. Thus, the Court **GRANTS** Plaintiff's motion for summary judgment on the issue of attorney's fees. The Court noted at the hearing that the parties had not briefed the proper amount of attorney's fees and **ORDERED** further briefing. Accordingly, while the Court **GRANTS** the request for attorney's fees, it will await further briefing before determining the appropriate amount of attorney's fees that Plaintiff should receive.

## Conclusion

Accordingly, the Court **GRANTS** summary judgment for Plaintiff and **DENIES** Defendants' summary judgment motion. The Court finds that Plaintiff is entitled to both a prejudgment interest award and attorney's fees. The Court finds that Plaintiff is entitled to $14.206.81 in prejudgment interest, plus simple interest to be awarded at the time of final judgment. The Court will await further briefing on the attorney's fees computation before determining the proper amount of attorney's fees to be awarded.

The Court will enter final judgment at that time.

    **IT IS SO ORDERED**.
    DATED: December 7, 2016.

                                              */s/ Stephen C. Williams*
                                              STEPHEN C. WILLIAMS
                                              United States Magistrate Judge